IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT G. WING, as Receiver for VESCOR CAPITAL CORP., et al.,<br><br>    Plaintiffs,<br><br><br>vs.<br><br><br>RON H. HOLDER, HOLDER FAMILY TRUST DTD 6/4/92,<br><br>    Defendants, | MEMORANDUM DECISION AND ORDER<br><br><br><br><br>Case No. 2:09-CV-118 |

The plaintiff, Robert G. Wing, as Receiver for VesCor Capital Corp. and numerous other related entities controlled by Val Southwick and VesCor,[1] moves this court for summary judgment, arguing that the undisputed facts show that the referral fees and investment returns paid by VesCor to the defendants were fraudulent transfers. (ECF. No. 17). The defendants opposed this motion. The court heard oral argument on the motion on September 23, 2010. M. David Eckersley appeared on behalf of the Receiver and Rulon J. Huntsman appeared telephonically on behalf of the defendants. After a careful review the parties written and oral arguments, the court enters the following Memorandum Decision and Order.

---

[1] Mr. Southwick operated a web of over 150 corporations and limited liability companies. For simplicity, the court refers to these corporations collectively as VesCor.

FACTUAL BACKGROUND

In February 2008, the United States Securities and Exchange Commission filed suit against Val Edmund Southwick and VesCor, alleging violations of the Securities Act of 1933 and the Securities and Exchange Act of 1934. This court appointed Robert G. Wing as receiver for VesCor on May 5, 2008. On June 12, 2008, in a state court action, Val Edmund Southwick pleaded guilty to nine felony counts of securities fraud. He was sentenced to serve the maximum term allowed, nine consecutive 1 to 15 year prison terms.

This case, like many others, arose out of the collapse of the alleged Ponzi scheme Mr. Southwick orchestrated and ran through a complex web of over 150 corporations and limited liability companies. After compiling and reviewing the financial and business records for VesCor, the Receiver asserts that VesCor, was in fact a Ponzi scheme. To support this allegation, the Receiver has released several declarations of expert Gil A. Miller, a forensic accountant. Mr. Miller's professional opinion is that VesCor "exhibited characteristics of a Ponzi scheme" beginning in 2000. (Third Decl. of Gil A. Miller, ECF No.17-2, ¶ 8). Mr. Miller has testified that VesCor mischaracterized the nature of their investment opportunities and any risk associated with making an investment. (*Id.* ¶ 12). VesCor promised returns while misstating the security collateralizing the investments. That is, investors were told their investment was secured by real property, including a first position trust deed when they were not. Additionally, Mr. Miller asserts that VesCor overstated its investment returns and understated its losses. VesCor also claimed to have a spotless track record, despite prior lawsuits and failed transactions. In fact, according to Mr. Miller, Vescor concealed its losses by paying

earlier investors with money raised from later investors. (*Id.* ¶ 24). This was likely because VesCor did not generate profits or positive cash flow from its real estate investments and continually operated at loss as far back as 1991. (*Id.* ¶ 46).

The Receiver has also obtained testimony from former VesCor employees to establish that the VesCor entities were all part of Mr. Southwick's scheme. For example, a controller for VesCor, Monique Fisher, testified that VesCor commingled investor money. According to Ms. Fisher, when there wasn't enough money in on account to satisfy VesCor's obligations, Mr. Southwick would transfer money between accounts in order to meet VesCor's obligations. In addition, Ms. Fisher testified that new investor money was routinely used to pay old investors. (Dep. Monique Fisher, ECF No. 15-15).

The Holder Family Trust is one of the early investors who VesCor allegedly paid with new investor money. Over the course of eight years, the Trust invested $426,800 with VesCor and received interest and principal payments of approximately $706,465. (ECF. No. 15-10). Thus, the Trust received $279,665 in excess of its investment.

VesCor also paid Mr. Holder for referring investors to VesCor. In total, VesCor paid Mr. Holder $59,040 in commissions or referral fees. Vescor paid $23,750 directly to Mr. Holder in September 2005. (ECF No. 15-10). At the request of Mr. Holder, VesCor paid $35,390 directly to his friend Martin Gerla's bank account. Apparently Mr. Holder owed Mr. Gerla money. (ECF No. 15-14). Mr. Holder is not and never has been licensed to sell securities.

The Receiver filed the present lawsuit on October 6, 2008, alleging that the investment returns and referral fees VesCor paid to the defendants were fraudulent transfers.

DISCUSSION

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Utah R. Civ. P. 56(c). "A 'material fact' is one 'that might affect the outcome of the suit under the governing law, and a 'genuine' issue is one for which 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal citation omitted).

The Receiver argues that he is entitled to a judgment that the investment returns and referral fees transferred to the defendants by Vescor were fraudulent transfers. In opposition, the defendants argue that there are disputed facts, focusing on whether Mr. Holder sold securities or solicited investors. Mr. Holder insists he was never designated by VesCor as a sales agent. Rather, he only provided information about VesCor in response to inquiries about his personal investing experiences.

To begin, the Receiver's unchallenged evidence that VesCor operated as a Ponzi scheme adequately establishes that VesCor transferred the referral fees and investment returns to the defendants with the intent to defraud investors. *See Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006) (citing *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995)).

Shifting to the defendants' defenses, the court will address the two transfer types–referral fees and investment returns–separately. Starting with the focus of Mr. Holder's objections, the

court concludes that Mr. Holder has failed to establish a genuine issue of fact as to whether he provided reasonably equivalent value for the referral fees VesCor paid him. Those who receive money for bringing new investors to a scheme have not provided reasonably equivalent value within the meaning of the Uniform Fraudulent Transfer Act. See *Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006). In his opposition, Mr. Holder attempts to explain his contact with each investor the Receiver alleges VesCor compensated him for referring to VesCor. These explanations are irrelevant to whether Mr. Holder provided reasonably equivalent value. It does not matter whether Mr. Holder contacted investors or simply responded to questions about his own investments; at bottom, VesCor paid Mr. Holder a percentage of the new investments it received from his contacts. These transactions did not provide reasonably equivalent value. Mr. Holder received money for essentially prolonging the fraud of and on the Vescor entities. "It takes cheek to contend that in exchange for the payments he received the [VesCor] scheme benefited from his efforts to extend the fraud by securing new investments." *Id.* at 560. Accordingly, the court concludes that the referral fees VesCor paid to Mr. Holder were fraudulent transfers.

The defendants made no argument regarding the Trust's receipt of investment returns. Accordingly, based on the facts presented by the Receiver, the court concludes that as a matter of law those transfers were fraudulent transfers under the Uniform Fraudulent Transfer Act. See Utah Code Ann. § 25-6-6. Payouts of returns on investments in a Ponzi scheme are not profits from an actual business venture. Instead, "they are payments that deplete the assets of the scheme operator for the purpose of creating the appearance of profitable business venture."

*Donell v. Kowell*, 533 F.3d 762, 777 (9th Cir. 2008). So, although the Holder Trust "was putting real money into [VesCor], and was getting what looked like real profits in return, in fact [it] never received 'reasonably equivalent value' for [its] investment, just cash that was moved around in an elaborate shell game." *Id.* For this reason, the court concludes that the investment returns VesCor paid to the Trust were fraudulent transfers.

During oral argument, the defendants asserted that they dispute the amounts the Receiver asserts the defendants received from VesCor. The defendants' written brief did not raise this argument, nor did the defendants provide any evidence to support this dispute. In fact, the defendants have failed to assert the amount they believe is correct. Such vague and unsupported argument is not sufficient to overcome a summary judgment motion. *Albright v. Attorneys Title Guar. Fund, Inc.*, 504 F. Supp. 2d 1187, 1202-03 (D. Utah 2007).

Accordingly, the Receiver's motion is GRANTED.

    IT IS SO ORDERED.

    DATED this 3rd day of December, 2010.

BY THE COURT:

_____
Dee Benson
United States District Judge